50 N.J. Super. 399 (1958)
142 A.2d 675
HANS SCHWARTAU, PLAINTIFF-RESPONDENT,
v.
CHARLES MIESMER AND EVELYN MIESMER, JOINTLY AND SEVERALLY, DEFENDANTS, AND BOROUGH OF CLOSTER, A MUNICIPAL CORPORATION IN THE COUNTY OF BERGEN, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued April 28, 1958.
Decided June 3, 1958.
*403 Before Judges PRICE, HANEMAN and SCHETTINO.
Mr. George Winne argued the cause for defendant-appellant.
Mr. William V. Breslin argued the cause for plaintiff-respondent (Messrs. Hammer & Hammer, attorneys).
The opinion of the court was delivered by PRICE, S.J.A.D.
Appellant seeks the reversal of a judgment entered on the verdict of a jury in favor of plaintiff-respondent against the Borough of Closter in the sum of $25,000. The jury returned a verdict of no cause for action in favor of defendants Miesmer. They are not parties to this appeal. The trial court denied appellant's motion for a new trial which motion was based on appellant's contention that the verdict was against the weight of the evidence.
The verdict returned in favor of plaintiff against defendant Borough of Closter was the result of personal injuries sustained by plaintiff when he fell into a catch basin of a storm sewer on July 10, 1956 between 9 P.M. and 10 P.M. *404 The catch basin was located near the southwest corner of the intersection of Columbus and Eckerson Avenues in the Borough of Closter.
The pretrial order contained the following stipulation:
"The parties agree to stipulate the following facts:
The defts. Chas. & Evelyn Meismer [Miesmer] are the owners of the property located on the southwest corner of Columbus Ave, and Eckerson Ave. in Closter, NJ, where they reside. They acquired title to sd. prop. on July 7/50, and have owned the prop. continuously ever since, and have resided there continuously since said date. The Boro of Closter, by written agreement dated Sept. 15/30 with James P. Burns, constructed a storm water sewer in Columbus Ave., and constructed a catch basin in Eckerson Ave. at the southwest corner of the intersection about 12 ft. from the westerly curb of Columbus Ave. * * *
There is a concrete paving and a concrete curb at the southwest corner of Columbus & Eckerson Aves., and the concrete curbing extended to the catch basin. On the date afsd. there was a metal grating over the catch basin in Eckerson Ave. up to the southerly curb line level with the pavement of the street. On the day of the acc. grass covered the surface of the ground inside the curb line on Eckerson Ave."
Plaintiff's home was located at the northeasterly corner of the aforesaid intersection diagonally across from the Miesmer residence. On the evening in question plaintiff had been a social guest at the home of defendants Miesmer.
The quantum of the jury's verdict is not challenged on appeal. The basic questions involved are: (a) whether the trial court erred in denying the motion of the defendant borough for judgment in its favor and in so doing failed to apply the statutory and decisional law of the State pertaining to tort liability of a municipality engaged in a non-proprietary undertaking; (b) whether certain rulings by the court during the trial were erroneous; (c) whether there was an abuse of discretion by the trial court in denying a motion for a new trial based upon the ground that the verdict was contrary to the weight of the evidence.
The catch basin in question had been damaged in 1951 by a contractor Paillex employed by defendants Miesmer. The damage occurred while the contractor was operating *405 a bulldozer at the time of the construction of the Miesmer home on the site in question. The contractor testified that he covered the damaged portion of the catch basin with two 3 x 6 boards. Miesmer and his wife testified that they reported the damage to the police department and Miesmer testified that he placed planks over the hole.
A police blotter entry, signed by the police captain, John Barnett, was received in evidence at the trial. It stated:
 "May 9, 1951 4:00 PM 12:00 Mid
4:10 PM Investigated Mr. Miesmer report of a Bull Dozer doing some damage, found the cover of the catch basin broken and missing, W. Haring notified, see Chief Cole report."
Haring at that time was an employee of the Department of Public Works in the defendant borough and has since become its superintendent. At the trial he denied that he was ever notified of such damage or that he knew of any repairs that were made to this particular catch basin until after July 10, 1956, the date of plaintiff's accident. The police captain of the borough testified at the trial confirming the record of the report to Haring.
Mrs. Miesmer testified that within a period of several months following the initial complaints to the police department by her and her husband in 1951 with reference to the damaged condition of the catch basin, she saw a borough truck parked at the location of the catch basin and saw several men working there, whom she recognized as borough employees. Both Mr. and Mrs. Miesmer stated that thereafter they observed a new wooden cover fitted over the catch basin opening, which cover was not the planking which had previously been used. Testimony of an expert witness on behalf of plaintiff established that use of a wooden cover reflected improper repair work because wood is not strong enough and is subject to the action of the elements. He testified that the cover should have been of cast iron. His testimony is unchallenged.
We conclude that the fitted wooden cover with the passage of time, became overspread with dirt, grass grew *406 thereon and the wood rotted; that the latent condition of danger progressed until the night of the accident, resulting in the injuries to plaintiff.
It was established that the municipality repaired the catch basin after the accident. Such testimony was properly received with the limitation that it was admitted solely with reference to the question of control by the municipality.
Appellant challenges the action of the trial court in denying motion for the entry of judgment in favor of the borough at the conclusion of the entire case, which motion had been preceded by the court's denial of a motion for involuntary dismissal at the end of plaintiff's case. On such motion plaintiff was entitled to the benefit of all evidence in his favor as well as all inferences favorable to him which could reasonably be adduced therefrom. Melone v. Jersey Central Power & Light Co., 18 N.J. 163 (1955); Morie v. N.J. Manufacturers Indem. Ins. Co., 48 N.J. Super. 70, 76 (App. Div. 1957).
The aforesaid recital of the evidence demonstrates that a prima facie case of tort liability against a municipality in a non-proprietary activity was presented. The basic question is whether it could reasonably be concluded from the evidence that there was active wrongdoing on the part of the Borough of Closter. The trial court was fully justified in concluding that the case should be submitted to the jury. Melone v. Jersey Central Power & Light Co., supra.
Appellant asserts that the trial court erred in refusing to charge certain requests submitted by defendant borough. The first of these alleged errors relates to the refusal of the court to charge the following request:
"The Legislature of the State of New Jersey, in 1933, passed an act which provides that no municipality or county shall be liable for injury to the person for the use of any public grounds, buildings or structures, any law to the contrary notwithstanding. I charge you that the evidence indicates that this catch basin was constructed with public funds by contract with J.P. Burns and as such is a public structure (R.S. 40:9-2)."
*407 This statute has no applicability to the catch basin in question. In the case of Hammond v. County of Monmouth, 117 N.J.L. 11, 14 (Sup. Ct. 1936), the court held that culverts did not come within the purview or scope of the act in question. In the case of Selph v. Morristown, 16 N.J. Misc. 19 (Sup. Ct. 1938), not officially reported, it was held that the thoroughfare where the accident in that case had occurred would not necessarily be included within the classification of "public grounds, buildings or structures" referred to by the statute in question. We hold that the site of the accident and the storm sewer here involved are not within the terms of this statute.
Appellant places reliance on the case of Thompson v. Board of Education, Millville, 20 N.J. Super. 419 (App. Div. 1952), where the provisions of N.J.S.A. 18:5-30 applicable to school districts were under consideration. The inapplicability of the cited case is found in the fact that there the injured plaintiff sustained her injury on a highly polished high school floor. This structure was clearly within the provisions of the statute.
Appellant next assigns as error the failure of the court to charge another request submitted by defendant, which was as follows:
"The only facts upon which you can find the Borough liable to Mr. Schwartau is if you determine that Walter Haring, as Supervisor of Roads, or any of the men under his supervision, made the fitted wooden cover in 1951 or 1952 when they were at the scene in a truck of the Borough's."
We find no error in the refusal to charge this particular request because the trial judge did charge the following request submitted by the defendant covering the same subject matter:
"In order for you to find a verdict against the Borough of Closter, you must find from the evidence that the employees of the Borough, under the direction of the Superintendent of Roads, committed an unlawful act or a lawful act in an unlawful manner, which caused the injuries to Mr. Schwartau."
*408 The court also in other portions of its charge adequately covered the subject matter, so that the issue with reference to the activity on the part of the borough or its representatives was fairly and properly submitted to the jury for its decision.
Appellant further challenges the refusal of the court to charge the following request:
"The accident in question occurred on July 10th, 1956. There is evidence conceded to by the Borough, that a metal head was applied to the catch basin in question several days after the accident. This evidence is limited to the question of who had control of the catch basin at the time of the accident and is limited to such cases as where there is an allegation of improper construction and evidence to sustain such charge. Here the complaint alleges improper construction of the catch basin but there was no proof of improper construction. Thus I charge you that you are to disregard any testimony relating to repairs after the accident because the charge of improper construction was not supported by any evidence."
In lieu thereof the court charged as follows:
"The accident in question occurred on July 10, 1956. There is evidence conceded to by the Borough, that a metal head was applied to the catch basin in question several days after the accident. This evidence is limited to the question of who had control of the catch basin at the time of the accident and is limited to such cases as where there is an allegation of active wrongdoing and evidence to sustain such a charge."
The borough by its requested charge "sought to have the jury instructed as to the limiting effect of proof of repair of the offending structure, by the Borough, after the date of the casualty." The modified charge by the court was proper under the law applicable to the facts of the case at bar. Blais v. American Grocery Co., 129 N.J.L. 274, 279 (Sup. Ct. 1942).
The question of the repair of the catch basin after the accident arose during the trial. Initially it was presented on the direct examination of Haring, where the testimony was the subject of objection by appellant. At that time it was made clear on the record that the sole purpose of such question was its bearing on the alleged control by the municipality. *409 On cross-examination of Haring further interrogation on the same subject was admitted to test Haring's credibility in view of his prior testimony that no records were kept. The court contemporaneously with the presentation of the criticized evidence instructed the jury as to the limited purpose for its then admission.
On cross-examination of defendant Miesmer the question arose again and the court emphasized that the testimony was not being received with respect to the question of liability but solely for the purpose of demonstrating alleged lack of control on Miesmer's part. It is to be noted also that another request submitted by the appellant with reference to the same subject was charged in the exact words submitted. This request to charge was as follows:
"In any event I charge you that testimony of repairs after an injury has resulted such as this, is for the sole purpose of showing control over the object existing at the time of the accident, and is in no way to be considered by you as an admission of liability of the Borough or any evidence of negligence of the Borough as being the proximate cause of the injury."
Appellant next challenged the action of the trial court in overruling the objection made by appellant with reference to the use by plaintiff of the deposition of defendant Charles Miesmer. The applicable rule is as follows:
R.R. 4:16-4 (b)  "The deposition of a party or of anyone who at the time of taking the deposition was an officer, director, or managing or authorized agent of a public or private corporation, partnership, or association which is a party may be used by an adverse party for any purpose."
Charles Miesmer was a party defendant. Appellant claims the inapplicability of the rule by reason of the fact that Miesmer was called as a witness by plaintiff and that therefore, although he was a party, examination of Miesmer by plaintiff's counsel by the use of the questions and answers appearing in the transcript of the deposition was error.
We find the examination proper. Mr. Miesmer did not lose his status as a party merely because he was called as *410 a witness by the plaintiff. The use of the deposition in the manner in which plaintiff employed it was within the cited rule that the deposition might be used "by an adverse party for any purpose."
Appellant next challenges the action of the trial court in placing a limitation on the cross-examination of defendant Evelyn Miesmer with reference to the time when she had conferred with her husband concerning the accuracy of one phase of his testimony on depositions before trial. It is noted in passing that after being named as a defendant in the action, Mrs. Miesmer had been eliminated as a party in the erroneous belief that she was not a co-owner of the property in question. Counsel and the court in dealing with the subject matter of the objection did so in the belief that she not only was no longer a defendant but that she had been properly eliminated as such.
Later in the trial of the case it developed that the elimination of Mrs. Miesmer as a proper party defendant was erroneous in that in or about November 1951 a deed had been executed by which she and her husband became tenants by the entirety. Following the disclosure of that situation Mrs. Miesmer was reinstated as a party, testified again and was interrogated by counsel for defendant borough. At that time counsel for the borough did not renew his attempt to examine Mrs. Miesmer with reference to the subject matter of the depositions aforesaid. The propriety of the question to which objection was made was clearly within the court's discretion. We find no error in the trial court's action in this regard.
Appellant next challenges the court's ruling in permitting Mrs. Miesmer to be recalled with reference to identification of the vehicle, allegedly seen by her at the site of the catch basin in charge of persons she asserted she recognized as borough employees.
The basis for the challenge of the court's action arises from the following situation. Mrs. Miesmer had been asked earlier in the trial whether she had noticed any borough vehicle in the vicinity of the storm drain and catch basin. *411 She answered in the affirmative but said she did not recall any label or designation on it. She had been interrogated whether there was anything to indicate from whence the truck came and in response thereto had replied that there were men with the truck whom she had seen around town." She referred to the truck as one belonging to the "town." This testimony was objected to on the ground that it constituted a conclusion of the witness. Appellant sought to have the testimony stricken. We find no error in the court's denial of the application. The witness was merely characterizing her prior reference to the vehicle. She had testified previously that she had noticed a borough truck at the scene of the accident, that the men on the truck had on prior occasions been seen by her on a borough garbage truck. Her subsequent reference to the truck as belonging to the "town" was as stated amplification of her prior testimony.
Appellant next challenges the action of the trial court in permitting Mrs. Miesmer to be recalled on behalf of plaintiff for the purpose of correcting certain testimony she had given previously. The challenge stems from the following situation. As set forth above, Mrs. Miesmer was originally a party to the action. By stipulation prior to the taking of testimony the case had been dismissed as to her on the mistaken assumption that she was not a record owner. Upon learning of the error she was during the course of the trial reinstated as a party defendant and the judgment of the jury of no cause for action which was subsequently rendered was in favor of her and her husband defendant Charles Miesmer.
When called as a witness she testified that the truck was "just a medium pick up truck," that she did not observe the license plate but she thought the truck was dark green in color. She had observed the truck from her bedroom window at a considerable distance. Prior to the noon recess on the trial day in question the borough counsel had interrogated her as follows:
*412 "Q. Mrs. Miesmer, do you have any more accurate description of the truck today than you could give us yesterday about the truck which you testified came to this scene with some men on it? A. No, I don't."
Thereafter the borough clerk testified that the borough in 1951 owned "a dump truck" and that the first "pick up truck" was purchased by the borough in 1954. Mrs. Miesmer was later recalled by plaintiff and testified that her recollection had been refreshed by the borough clerk's testimony which she had heard and that she realized that the description of the truck which she had used earlier was incorrect. Counsel for the borough objected, asserting that she should not be permitted to recant her testimony. The court overruled the objection. The witness then testified that the truck in question was a dump truck. The record discloses the following:
"Q. Has your memory been refreshed from anything you heard this morning from what type of truck this was? A. Yes.
Q. How was your memory refreshed, to what effect? A. To the effect that I did not know the proper term. The term that I used yesterday was incorrect.
Q. What is correct?
Mr. Winne: I object. I think this is not proper for the witness now to be able to recant apparently the testified facts of her testimony heretofore given after there has been testimony given in behalf of the defendant as to the very important question now being asked, namely, the testimony of Murphy here in court this morning.
The Court: I will allow her to correct her testimony, if that is what is being done.
Mr. Breslin: That is all I am asking her to do, the same as the defendant Miesmer was permitted to correct his testimony from his deposition to which I did not object.
I am seeking the truth, and that is all.
Mr. Winne: We all are.
The Court: You may testify.
By Mr. Breslin:
Q. Tell us what you remembered specifically about the type or anything about the truck? A. Well, I now know that you call the type of truck a dump truck.
Q. Can you describe what you saw? A. Well, I saw it is a truck, and it has sides to it, and it is open in the back, and has a cab on it."
Mrs. Miesmer asserted that she was unacquainted with the specific designation of the vehicle and, having heard *413 the testimony of the borough clerk, realized that she had described the vehicle in question improperly. Recalling the witness and affording her an opportunity to correct testimony theretofore given are matters resting within the sound discretion of the trial court. We find no error in the court's ruling in this regard.
Appellant alleges error in the action of the trial court admitting the police blotter as an exhibit. The challenge is made on the basis that the offer of the police blotter was made during the examination of the witness Captain Barnett, by plaintiff's counsel who had claimed surprise. Defendant asserts that the receipt of the police blotter in evidence should have been for the limited purpose of neutralization of the witness's testimony citing State v. Cooper, 10 N.J. 532 (1952).
We hold that the admission of this particular exhibit as affirmative evidence under the circumstances of this case was proper. In an action of this type evidence of active wrongdoing on the part of the municipality is essential for a plaintiff to prevail. Notice to a municipality is a prime requisite in establishing liability against it in a case of this type. Kelley v. Curtiss, 29 N.J. Super. 291 (App. Div. 1954). The receipt of the police blotter in the case at bar as an exhibit was proper and appropriate as affirmative evidence of the factual contention that Haring had received notice of the damaged condition of the catch basin in question. Kelley v. Curtiss, supra. The record of the case justifies the conclusion that the court did not err in the admission of the police blotter as affirmative evidence of notice to the municipality's road supervisor. We are of the opinion that such record might be deemed admissible also under the authority of N.J.S. 2A:82-35.
Appellant next challenges the court's action in permitting plaintiff to be recalled for the purpose of giving additional testimony as to the physical condition of his injured leg which had caused him discomfort during the course of the trial. The admission of this evidence was clearly within the court's discretion. Furthermore, there is *414 no challenge to the quantum of the award. We find no prejudicial effect flowing from the admission of such evidence and consequently no resultant error.
Appellant charges error in the trial court's refusal to grant a new trial. The challenge to the verdict was based on the contention that the verdict was contrary to the weight of the evidence. The verdict is not to be set aside unless "it clearly and convincingly appears that the verdict was the result of mistake, partiality, prejudice or passion." Melone v. Jersey Central Power & Light Co., supra.
Our examination of the evidence justifies the conclusion that the jury was warranted in rendering this verdict in favor of the plaintiff. There was evidence from which a jury might reasonably find that the borough had affirmatively acted to repair the damaged catch basin and had done so negligently. Hartman v. Brigantine, 42 N.J. Super. 247 (App. Div. 1956).
Affirmed.