SYLVESTER P. MELONE, PLAINTIFF-RESPONDENT, v. JERSEY CENTRAL POWER & LIGHT CO., A CORPORATION OF NEW JERSEY AND EDWARD J. WALLING, DEFENDANTS-APPELLANTS.

SYLVESTER P. MELONE, PLAINTIFF-RESPONDENT, v. LEO J. TEARS, DEFENDANT-APPELLANT.

Argued February 21 and 28, 1955—Decided March 28, 1955.

164

*Mr. Mark Townsend* argued the cause for the defendants-appellants Jersey Central Power & Light Co. and Edward J. Walling (*Mr. Thomas F. Doyle,* of counsel; *Messrs. Townsend & Doyle,* attorneys).

*Mr. William J. O'Hagan* argued the cause for the defendant-appellant *Leo J. Tears* (*Messrs. Reid and Flaherty,* attorneys).

*Mr. Abraham Frankel* argued the cause for the plaintiff-respondent (*Messrs. Frankel & Frankel,* attorneys).

The opinion of the court was delivered by

BURLING, J. These appeals arise from a civil action sounding in tort, grounded in the alleged actionable negligence of the defendants Jersey Central Power & Light Co., a corporation of the State of New Jersey, and its employee truck driver, Edward J. Walling (hereinafter referred to as Jersey Central and Walling), in respect of the operation of a maintenance truck, and the alleged actionable negligence of the defendant Leo J. Tears (hereinafter referred to as Tears), in respect of the operation of an automobile of the private passenger-carrying category. The plaintiff Sylvester P. Melone (hereinafter called Melone) was a passenger in Tears' automobile at a time when it collided with Jersey Central's truck. Melone instituted the action in the Superior Court, Law Division, against the three defendants hereinbefore named. A jury rendered verdicts in favor of Melone and against all three defendants, and assessed damages in the sum of $15,000. Judgment was entered on the verdict. The defendants' motions for new trial were denied and they appealed to the Superior Court, Appellate Division. The judgment was affirmed by the Superior Court, Appellate Division, unanimously as to Tears and by a divided vote as to Jersey Central and Walling. *Melone v. Jersey Central Power & Light Co.,* 30 *N. J. Super.* 95 (*App. Div.* 1954). Jersey Central and Walling appealed to this court under *N. J.*

*Const.* 1947, *Art.* VI, *Sec.* V, *par.* 1 *clause* (b). *Cf. R. R.* 1:2–1(b). Tears petitioned for certification, which we allowed. *Melone v. Tears,* 16 *N. J.* 195 (1954).

There is no dispute as to the fact of collision. In this respect the undisputed facts are that the collision occurred about 4:00 A. M. on Sunday morning, August 31, 1952 (during the Labor Day week-end). It was dark and rainy (although there is dispute as to whether the precipitation was light or heavy). The site of the collision was an intersection of State Highway Route 36 and Broad Street, in the Borough of Keyport, New Jersey, about 32 miles from Jersey City.

Automatic traffic signals, overhead lights of the red-amber-green variety, existed at this intersection, and in addition the intersection was illuminated by two overhead arc lights. State Highway Route 36 at this location was 44 feet wide from curb to curb and consisted of a northbound and a southbound traffic lane of concrete paving, each ten feet wide, the two traffic lanes being separated by a painted white line, and each lane flanked on the curb side by a macadam strip 12 feet in width.

The truck involved was a heavy-duty line repair truck, weighing between four and five tons, to which would be added its load. Walling, the driver, had stopped the truck in the northbound traffic lane on Route 36 at the intersection in obedience to the traffic signal. When he attempted to resume forward motion the motor of the vehicle stalled, apparently as a result of overheating.

Tears' vehicle was a passenger type automobile (a sedan of the model year 1947). The collision which occurred was of the "rear end" variety—Tears was operating his vehicle in the northbound traffic lane of Route 36 when it came in contact with the rear of the stopped truck. Melone was a passenger in Tears' vehicle.

Both vehicles were damaged by the impact and Tears and Melone sustained personal injuries. In addition to Melone's action against the three defendants, there was an independent action by Tears against Jersey Central and Walling. The

Tears action resulted in a verdict and judgment for the defendants therein, which Tears did not appeal.

The present appeals stem from the Melone action. We hereinafter treat the two appeals separately.

## I. The Jersey Central-Walling Appeal

The questions involved in the appeal of Jersey Central and Walling are whether the Superior Court, Appellate Division, erred in affirming the denial by the Superior Court, Law Division, of the Jersey Central and Walling motions (a) to dismiss Melone's action at the close of the plaintiff's case; (b) to enter judgment for Jersey Central and Walling at the close of the reception of all the evidence; and (c) for a new trial, on the ground that the verdict of the jury was against the weight of the evidence.

A motion for judgment of dismissal admits the truth of the plaintiff's evidence and every inference of fact that can be legitimately drawn therefrom which is favorable to the plaintiff and denies only its sufficiency in law. And on a motion for judgment the trial court cannot weigh the evidence but must accept as true all evidence which supports the view of the party against whom the motion is made and must give him the benefit of all legitimate inferences which are to be drawn therefrom in his favor. These are settled juridical concepts. And it is equally well established that a jury verdict is not to be set aside as against the weight of the evidence unless it clearly and convincingly appears that the verdict was the result of mistake, partiality, prejudice or passion. Cf. R. R. 1:5–3(a), as amended June 28, 1954, effective September 8, 1954.

There is no dispute as to the duty of reasonable care owed by Jersey Central and Walling to Melone. The contention of defendants Jersey Central and Walling is that Melone produced no evidence of negligence on their part, nor evidence that any action or inaction of theirs proximately caused the collision with its resultant injuries to Melone. Their emphasis on this appeal is placed upon Tears' alleged negligence.

■ If there was evidence of negligence attributable to the defendants Jersey Central and Walling which proximately caused the event, although coupled with negligence of Tears, then the defendants Jersey Central and Walling are liable to Melone. The applicable rule was quoted by Mr. Justice Wachenfeld from *Matthews v. Delaware, L. & W. R. Co.*, 56 *N. J. L.* 34 *(Sup. Ct.* 1893), in *Ristan v. Frantzen,* 14 *N. J.* 455, 460 (1954) as follows:

" '* * * But when each of two or more persons owes to another a separate duty, which each wrongfully neglects to perform, then, although the duties were diverse and disconnected, and the negligence of each was without concert, if such several neglects concurred and united together in causing injury, the tort is equally joint, and the tortfeasors are subject to a like liability.' "

As we shall demonstrate, there was evidence of negligence attributable to Tears. We find that there was also evidence from which negligence on part of the defendants, Jersey Central and Walling, could be inferred.

■■ There was evidence, although slight and disputed by the defendants, that the truck could have been removed from the traveled surface of the highway. There was evidence that this was not attempted. Negligence may consist of inaction. *Bohn v. Hudson & Manhattan R. Co.*, 16 *N. J.* 180, 186 (1954). And it may be observed that negligence may result from conduct "which 'creates a situation which involves an unreasonable risk to another because of the expectable action of the other * * *'." See *Brody v. Albert Lifson & Sons,* 17 *N. J.* 383, 389 (1955).

There was evidence that the intersection at which the truck had stopped was illuminated by overhead arc lights, but the atmospheric conditions and time of day combined to produce a dark night, with rain; a dispute of fact as to the extent of the rain, and consequent reduction of visibility, existed. There was a dispute in the evidence as to whether the truck itself was illuminated, although the evidence demonstrates that it was carrying red reflectors and a white sign observable by persons approaching it from the rear. There was testimony that it carried one taillight located under the tail-

board on the left side. There was evidence that an employee of the corporate defendant used a white "spot" light or flashlight to signal vehicles approaching the truck from the rear, including Tears' vehicle. There was contradictory testimony as to the scope of this effort to warn motorists, including Tears. There was also evidence that the truck was equipped with radio communication equipment and that no attempt was made to use it to obtain assistance.

In addition there was evidence that the truck crew set out no flares although it had four or five minutes in which to do so. The truck crew had no flares on hand, the crew having left its three flares at a work location in Keansburg, the last point of work before it proceeded to the scene where the collision occurred.

In this respect the trial court instructed the jury in the language of *R. S.* 39:3–64, as amended by *L.* 1947, *c.* 82, *sec.* 1, relative to emergency warning light equipment. *R. S.* 39:3–64, as amended, *supra,* required commercial motor vehicles weighing over 5,000 pounds (the evidence places the truck owned by the corporate defendant in this category) to carry "ready for immediate use * * * at least three portable flares, electric lanterns, red reflector emergency warning devices, or other devices each capable of producing a warning visible from a distance of at least five hundred feet for a period of at least twelve hours * * *" and detailed the use of the same when the vehicles were disabled and could not be removed from the highway, including the placement of "one in the center of the lane of traffic occupied by the vehicle" at an approximate distance of 100 feet to the rear, and one "at the traffic side of the vehicle." These provisions applied "on any highway, outside of a business or residence district."

The defendants Jersey Central and Walling contended that the statute was not applicable because the evidence disclosed that the area in which the collision occurred was a residence district. Testimony of various witnesses was in dispute as to the conclusion whether the area was a residence district. The statutory terms, however, were subject to definition by

the court under the express definition accorded them in the pertinent legislation. The collision occurred August 31, 1952. At that time the pertinent statute included the following definitions (*R. S.* 39:1–1, as amended *L.* 1951, *c.* 25, *sec.* 1):

" 'Business district' means that portion of a highway and the territory contiguous thereto, where within any six hundred feet along such highway there are buildings in use for business or industrial purposes, including but not limited to hotels, banks, office buildings, railroad stations, and public buildings which occupy at least three hundred feet of frontage on one side or three hundred feet collectively on both sides of the roadway."

" 'Residence district' means that portion of a highway and the territory contiguous thereto, not comprising a business district, where within any six hundred feet along such highway there are buildings in use for business or residential purposes which occupy three hundred feet or more of frontage on at least one side of the highway."

There was testimony demonstrating that the area of Route 36 in question was neither a "residence district" nor a "business district" within the statutory definitions above quoted. The evidence relating to the status of the location justified a charge to the effect that it was obligatory for Jersey Central and Walling to comply with the provisions of *R. S.* 39:3–64, as amended, *supra.* Of this more will be said in connection with Tears' appeal. It suffices that the statute was applicable and therefore the manner of its presentation to the jury was not prejudicial to substantial rights of the defendants Jersey Central and Walling.

The defendants Jersey Central and Walling argued on this appeal that Melone did not plead their alleged violation of the statute relating to warning devices, as an element of negligence on the part of these defendants. The complaint alleged "there were no warning signals of any kind, manual or mechanical, to advise of the presence of said truck, parked in the nigh(t)time on said highway." The pretrial order reiterated these allegations in substance.

*R. R.* 4:8–1 in this respect requires only the pleading of the facts on which a claim is based showing that the pleader is entitled to relief.

A pleading is required to be such as fairly to apprise the adverse party of the state of facts which it is intended to prove. *R. R.* 4:9–3. The objective of the present practice is to reach an issue through the media of simplified pleadings, but not at the sacrifice of stating the elements of a claim. *Anderson v. Modica,* 4 *N. J.* 383, 393, 394 (1950). *Civil Procedure Form* 9, a model form of a complaint in a negligence action, suggests brevity is desirable. It has been inferred that this form requires nothing more than the date, name of the street, city and state where the accident occurred, plaintiff's mission at the moment of impact and the charge that the impact was caused "negligently," although allegations of particulars continue to be common practice. *Schnitzer & Wildstein, N. J. Rules Serv.* AIV–143, 144. We do not decide the various circumstances which would call for more detailed pleadings, but observe in passing that where a statute *creates* a cause of action there may be a necessity for the pleading of it. *Ibid., AIV–145.* It must not be forgotten that the aim of the rules is substantial justice, and that "All pleadings shall be so construed as to do substantial justice." *R. R.* 4:8–6. *Cf. C. B. Snyder Realty Co. v. National Newark, etc., Banking Co.,* 14 *N. J.* 146, 155–156 (1953).

There is authority to the effect that:

"It is usually sufficient in automobile cases to allege the particular conduct relied on as constituting a ground for recovery, without reference to statutory provisions claimed to have been violated by such conduct." 9B *Blashfield's Cyclopedia of Automobile Law and Practice* (1954, *Bandy*), sec. 5952, *pp.* 101 *et seq.*

In this respect no objection was asserted by defendants Jersey Central and Walling during the reception of evidence nor after the trial court instructed the jury in reference to the statute, *R. S.* 39:3–64, as amended, *supra.* The trial court, before the retirement of the jury, asked counsel whether they had "omitted anything else you gentlemen feel I should include." These defendants, Jersey Central and Walling, during the subsequent colloquy, referred only to the

definition of residence district as charged. And after the jury retired the trial court received further objections from these defendants, not one of which found fault with the application of the statute to them, but only with the part of the charge wherein the trial court left the determination of the character of the area to the jury. In this respect, as hereinbefore stated, we find no error prejudicial to the substantial rights of the defendants Jersey Central and Walling.

■ In summary, we find that there was evidence from which reasonable men could infer that the defendants Jersey Central and Walling were negligent and the verdict was not against the weight of the evidence within the purview of R. R. 1:5–3(a), as amended, *supra*.

■ The further contention was made that the evidence conclusively shows that the negligence of Tears was the sole proximate cause of the collision.

Tears, the operator of the automobile in which Melone was riding, as a witness for Melone testified the overhead (street) light showed him the truck when he (Tears) was 200 feet away. Tears further testified: that he saw this truck soon after he rounded the bend in the highway; a "second or two afterwards" he saw the red reflectors on the rear of the truck; he was moving at 30 to 35 miles per hour and applied his brakes, slowing the car; he saw a man in the highway waving a flashlight; when he was approximately 100 feet from the truck; he didn't reduce speed perceptibly but prepared to pass; when he was approximately one or two car lengths from the truck, two men appeared in the other lane (*i. e.,* the one he was moving into to pass). He testified there was no reason to stop before that.

■ Ordinarily, the comparison and determination of alleged plural or concurrent causes falls within the province of the jury. *Green, Proximate Cause,* (1927), *pp.* 143–144. Where there is a factual dispute as to the events and circumstances which caused the injuries, proximate cause is a jury question. *Vadurro v. Yellow Cab Co. of Camden,* 6 *N. J.* 102, 108 (1951). *Cf. Battaglia v. Norton,* 16 *N. J.* 171,

179 (1954). We are of the opinion that proximate cause, of concurrent nature, was properly submitted to the jury under the circumstances of this case.

The defendants Jersey Central and Walling also asserted that Melone was contributorily negligent as a matter of law.

Melone's own testimony was: that Tears was driving between 30 and 35 miles per hour; Tears was driving in "a very normal fashion" considering the hard rain and nothing in the driving caused Melone to protest; Melone wasn't paying much attention and noticed the truck only when Tears yelled; Melone had been "just sitting there nonchalantly." Melone's testimony as to absence of lights on the truck was equivocal.

The general rule as to a passenger is that he is bound to exercise such care for his own safety as the exigencies of the situation require. *Kaufman v. Pennsylvania Railroad Co.*, 2 *N. J.* 318, 323 (1949). In the *Kaufman* case, *supra*, the court held (2 *N. J.*, at *page* 323) :

"The duty of an invitee to warn the driver is only of a known and appreciated peril if a reasonably prudent person would have given such warning under the same or similar circumstances, and the risk could thereby have been averted."

We are not convinced that Melone's conduct under the circumstances of this case was such that no reasonably debatable issue existed as to his alleged contributory negligence. It was properly left to the jury for determination and we do not find that the verdict is against the weight of the evidence within the review procedure prescribed by *R. R.* 1:5–3(*a*), as amended, *supra*. See for example *Gudnestad v. Seaboard Coal Dock Co.*, 15 *N. J.* 210, 222–223 (1954). *Cf. Battaglia v. Norton, supra* (16 *N. J.*, at *page* 179); *Shappell v. Apex Express, Inc.*, 131 *N. J. L.* 583, 587 (*E. & A.* 1944).

## II. Tears' Appeal

The questions involved on the appeal of defendant Tears include whether (a) a statement relating to Tears' convic-

tion in a traffic court "as a result of this accident" by the attorney for the defendants Jersey Central and Walling, required the trial court to declare a mistrial; (b) whether there was error prejudicial to Tears in the trial court's failure to exclude testimony relative to conduct by one of the truck crew after the collision; and (c) whether the trial court erred in leaving to the jury the question whether the site of the collision was in a residence district.

Tears did not contend on this appeal that the verdict against him was contrary to the weight of the evidence. Further there was ample evidence from which a jury could reasonably infer that Tears operated his motor vehicle in a negligent manner, proximately causing, at least in concurrence with negligence of his co-defendants, Jersey Central and Walling, the collision and resultant injury to Melone.

Tears' first point of argument was that the trial court abused its discretion in failing to declare a mistrial when on cross-examination counsel for Jersey Central and Walling (the co-defendants) asked Tears whether he was convicted in a magistrate's court as the result of this accident. Defendant Tears' two trial counsel both objected. Tears' defense counsel moved for mistrial. The objection was sustained, the trial court admonishing "the jury will disregard that entirely," and the motion for mistrial was denied. No abuse of discretion is indicated. *Cf. Gregg v. Fisher,* 377 *Pa.* 445, 105 *A. 2d* 105 (*Sup. Ct.* 1954). Compare *State v. Witte,* 13 *N. J.* 598, 611–612 (1953).

Tears next contended that testimony by a police officer, Nuss, as to observation (at least two minutes after the collision) of a man standing back of Tears' vehicle with a big light was erroneously admitted in evidence. Tears' defense counsel began an objection, the trial court interrupted, holding the question irrelevant but permitting it as corroboration of Tears' testimony. Tears had testified he saw a man waving a light in back of the truck, in sufficient time for him (Tears) to stop but he didn't reduce speed and prepared to pass the stalled truck. Under these circumstances we discern no error prejudicial to Tears' substantial rights.

Tears further contended that the trial court erred in submitting to the jury the question whether the collision occurred in a residential area. The Appellate Division held that no objection was asserted to the portion of the charge attacked. There was an objection by defendants Walling and Jersey Central, without expression of grounds for objection, *after* the jury retired, which objection was joined in by Tears' defense counsel. From the colloquy between the court and counsel prior to the retirement of the jury it was contended on this appeal by Tears that ample opportunity for objection was not given the parties by the court within the spirit of *R. R.* 4:52–1. However, even if this be so, counsel were permitted to object subsequently and even then did not state grounds for the objection, nor request correction of the instruction. Tears had testified that the district was semi-residential. Officer Nuss' testimony was as to physical facts of the area clear and undisputed. The question was one of statutory application, not opinion, and the evidence warranted a charge that the provisions of *R. S.* 39:3–64, as amended, *supra,* were effective in the area involved. Under Nuss' testimony as applied to *R. S.* 39:3–64, as amended, *supra,* and *R. S.* 39:1–1, as amended *L.* 1951, *c. 25, sec. 1, supra,* it appears that the area was neither a "business district" nor a "residence district."

The trial court correctly charged that a violation of the Traffic Act was not in itself negligence. It is a factor to be taken into consideration, an incident of negligence. *Renner v. Martin,* 116 *N. J. L.* 240, 241 (*E. & A.* 1936). *Cf. Seibert v. Goldstein Co.,* 99 *N. J. L.* 200, 201–204 (*E. & A.* 1923). The violation of a statute by others does not constitute a sufficient reason to fail in one's own duty to exercise reasonable care.

## Conclusion

For the reasons hereinabove expressed the judgment of the Superior Court, Appellate Division, is affirmed.

Jersey Central Power & Light Co. case:

*For affirmance*—Chief Justice VANDERBILT, and Justices BURLING, JACOBS and BRENNAN—4.

*For reversal*—Justices HEHER and OLIPHANT—2.

Tears case:

*For affirmance*—Chief Justice VANDERBILT, and Justices OLIPHANT, BURLING, JACOBS and BRENNAN—5.

*For reversal*—Justice HEHER—1.