52 N.J. Super. 341 (1958)
145 A.2d 482
JOSEPH COUGHLIN, MINOR, BY HIS GUARDIAN AD LITEM, MARTIN H. COUGHLIN, AND MARTIN H. COUGHLIN, IN HIS OWN RIGHT, PLAINTIFFS-APPELLANTS,
v.
U.S. TOOL CO., INC., A CORPORATION, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued September 29, 1958.
Decided October 24, 1958.
*343 Before Judges SCHETTINO, HALL and GAULKIN.
Mr. Samuel H. Nelson argued the cause for plaintiffs-appellants (Mr. Irving J. Rosenberg, attorney).
Mr. Theodore W. Geiser argued the cause for defendant-respondent (Messrs. Shaw, Pindar, McElroy & Connell, attorneys).
The opinion of the court was delivered by SCHETTINO, J.A.D.
Appeal is taken from a judgment entered upon the granting of a motion of involuntary dismissal pursuant to R.R. 4:42-2(b). This is an infant trespasser case. Plaintiff, Martin H. Coughlin, is the father of plaintiff, Joseph. Hereafter Joseph will be referred to as plaintiff.
In Simmel v. New Jersey Coop Co., 28 N.J. 1, 143 A.2d 521 (1958), Mr. Justice Burling comprehensively reviews the history of liability of a landowner for negligent injury to infant trespassers. After reviewing the history of the law and its development from no liability to the "relatively new" rule imposing liability, the Supreme Court stated that, since the opinion in Strang v. South Jersey Broadcasting Co., 9 N.J. 38 (1952), "the rationale of the Restatement of Torts, § 339 has taken firm roots in our jurisprudence." (28 N.J. at page 9.) That section states:

"Artificial Conditions Highly Dangerous To Trespassing Children.
A possessor of land is subject to liability for bodily harm to young children trespassing thereon caused by a structure or other artificial condition which he maintains upon the land, if
(a) the place where the condition is maintained is one upon which the possessor knows or should know that such children are likely to trespass, and
(b) the condition is one of which the possessor knows or should know and which he realizes or should realize as involving an unreasonable risk of death or serious bodily harm to such children, and
(c) the children because of their youth do not discover the condition or realize the risk involved in intermeddling in it or in coming within the area made dangerous by it, and
(d) the utility to the possessor of maintaining the condition is slight as compared to the risk to young children involved therein." *344 However, the Supreme Court points out "that the landowner or occupier is not an insurer of the infant." Simmel case, supra, 28 N.J. at page 11.
We are reminded by Judge Conford in Hoff v. National Products Refining Co., 38 N.J. Super. 222, 233 (App. Div. 1955) that:
"An examination of section 339 of the Restatement of Torts indicates it is part of a comprehensive scheme for formulation of the degree of liability of landowners for bodily injury to any trespasser, sui juris or not, comprised of sections 333 to 339, inclusive. Section 333 states the hypothesis that the possessor of land does not owe a trespasser the duty of reasonable care except as stated in sections 334 to 339. Sections 334 to 338 impose a gradation of liability to trespassers, whether or not children, dependent on the kind of activity or condition maintained, the extent of the area of danger known to be the subject of trespass, and the nature of the landowner's warning to such trespassers. In this progression there is but a slight, yet appreciable, expansion of the degree of liability by Section 339 in favor of `young children.' The gradual merging of the area of liability to trespassers generally into that of liability to children, under both the Restatement and the common law antecedents thereof, was noticed by the Supreme Court in the Strang case, supra (9 N.J., at pages 44, 45)."
Certain important facts are in dispute, but for purposes of this appeal from a judgment of involuntary dismissal we accept as true all evidence which supports plaintiffs' case and we give plaintiffs the benefit of all inferences which may logically be drawn therefrom in plaintiffs' favor. Melone v. Jersey Central Power & Light Co., 18 N.J. 163, 170 (1955).
Martin Coughlin rented a new apartment on North 18th Street in East Orange. The backyard of the new apartment building was contiguous to Center Way, a narrow public street. On the opposite side of Center Way was the rear of defendant's property upon which was located a series of garages. The roofs of the garages were nine feet from the ground. Along the wall in front of one of the garages was a bumper guard consisting of three strands of pipes about three feet high and 6 feet long. The bumper guard was to prevent automobiles from backing from other people's *345 property into and thereby damaging defendant's garage. These bars facilitated ascent to the roof since they were ladder-like in construction. The plaintiff in October 1956 was between 14 and 15 years of age.
When plaintiff was informed by his father that the family was going to move from Newark to East Orange, he visited the neighborhood in an attempt to acquaint himself with those who might become his new friends. On each of the several occasions when he visited his new neighborhood, plaintiff saw various children playing on the bumper bars and climbing from the bumper bars to the roof of defendant's property. However, he himself did not play on the bars during any of these visits. There is testimony that defendant was aware of these activities of other children carried on against its objections, but only of activities occurring in the daytime; none, at night.
On October 8, 1956, before his family moved into the apartment, plaintiff and a friend went to the Coughlins' new apartment at 7 o'clock at night to do some painting. While plaintiff was painting, his friend borrowed plaintiff's bicycle and went out riding around the neighborhood. When plaintiff tired of painting, he went outside to look for his friend. He stated he caught a fleeting glimpse of him but was not able to attract his attention. Recalling that he had seen some of the children climb from the bumper bars to the roof of defendant's garage and thinking that, if he got up there, he might be able to attract his friend's attention, plaintiff climbed from the bumper bars onto the roof of defendant's garage.
He admitted that when he got on the roof he could not see beyond a very short distance because "It was just too dark." The roof was not even and was divided by a series of parapets. Plaintiff jumped over one and then jumped over another, each time landing safely on the garage roof. When he was crossing the first two parapets, he could just make out that there was a roof. When he went over the third, it looked the same to him and he thought he would land on the roof. But in jumping over the third parapet, *346 he did not land on the garage roof but fell to the ground and injured himself seriously. On cross-examination, plaintiff admitted he was aware of the risk and danger involved in traversing the roof top in the dark.
There was no lighting on defendant's roof, nor was there any lighting near the bumper bars, nor was there any device which would prevent children from trespassing on the property.
At trial, various neighborhood children testified that on occasions they had played on the bars and had used them as means of getting to the top of defendant's garage roof. Adult neighbors testified that on many occasions they had observed children jumping on the bars and playing on defendant's roof. But no testimony was produced that any child played on the roof at night. The testimony of one of the defendant's officers and of a policeman indicated that defendant company had complained of several breakings and damage to the roof allegedly caused by children.
Plaintiff maintains that his proof established a prima facie case of liability requiring submission to the jury. At the conclusion of plaintiff's case, defendant moved for a judgment of involuntary dismissal which was granted by the trial court.
A landowner is liable for injuries sustained by an infant trespasser if the landowner knows or should know that children are likely to trespass (Restatement of Torts, sec. 339(a)); and that a structure or other artificial condition on landowner's property involves an unreasonable risk of serious bodily harm to them if he fails to maintain proper safeguards (sec. 339(b)); if the children, because of their youth, do not discover or realize the risk of harm inherent in the condition (sec. 339(c)); and if the utility to the possessor of maintaining the condition is slight as compared to the risk to the child involved (sec. 339(d)). In order to prove a prima facie case, plaintiff must establish every one of these conditions.
What are here involved are two static conditions, the first, the bumper bars, and the second, a garage roof. Although *347 defendant had knowledge that children were inclined to play on the bumper bars and on occasions had been known to go upon the roof of its building, the foreseeability here must be determined on the basis of the natural and reasonable inclination of the neighborhood children with respect to the use of these bumper bars. Plaintiff proved that children were known to play on these bars during the daytime hours. But plaintiff produced no evidence that children played on the bumper bars when it was dark, or used the bumper bars to climb on defendant's roof at night. Plaintiff's testimony therefore fails to fulfill the condition set forth in section 339(a).
Failure of plaintiffs' proof of defendant's knowledge of trespasses at night is not the only basis for our opinion. It cannot be said that the proximity of the bumper bars to its building, facilitating to a certain extent the use of the bars as a ladder, could be considered such a serious condition as to impose upon defendant the duty of exercising care in its use and maintenance and to provide safeguards to prevent children from using it. Defendant placed next to an ordinary garage perfectly harmless bumper bars which it reasonably felt were quite useful. Certainly, this condition is distinguishable from a fire, a deep excavation, exposed power lines and the like, upon which liability to infant trespassers has been based. Healing v. Security Steel Equipment Corp., 51 N.J. Super. 123, 130-132 (App. Div. 1958); Prosser on Torts (2d ed. 1941), § 76, pages 441-442. Even assuming that there is some dangerous condition present in the bars or roof, it cannot be said that the danger is unreasonable when weighed against the utility of having them there. We hold that here the risk to young children is slight compared to the utility to the possessor of maintaining the condition. Plaintiff has failed to prove the contrary view. Restatement of Torts, § 339(d).
Nor can we agree with the suggestion that though the bars are not dangerous in themselves they facilitated ascent to the "dangerous" roof. In Conn v. Kentucky & I Term. R. Co., 163 Ky. 223, 173 S.W. 325, 327, L.R.A. 1915D, *348 160 (Ct. App. 1915), referred to at 145 A.L.R. 330, the court said:
"* * * It could hardly be said that a retaining wall like the one in question is dangerous. * * * The only sense in which it could be said to be dangerous is that it was easy to climb and easy to fall from; but, for that matter, so is every tree, every pole, every fence, every ladder, every railing or set of steps, that the owner may have about his premises. * * * In our opinion, the retaining wall in question was not such a dangerous instrumentality or thing as to impose on the defendant any liability for its original construction or its failure to construct barriers to prevent boys from climbing on it."
See also, Restatement of Torts, § 339, p. 922, comment (b); and Williams v. Overly Mfg. Co., 153 Pa. Super. 347, 34 A.2d 52 (Super. Ct. 1943). Neither the bumper guards nor the roof were of such character as likely to cause an unreasonable risk of serious bodily harm within the true meaning of the rule. Plaintiff has failed to establish section 339(b).
Finally, we note the requirement of section 339 (c). Plaintiff testified that he went in a certain direction on the roof because "I didn't want to take any chances of falling."; answered "Yes" to the question "Of course you knew that if you ever fell off that roof you were liable to get hurt?"; and further answered "Yes" to a question which contained the following words "* * * and you know there is danger of falling any time you are up on a roof?" In view of plaintiff's own testimony no jury could have found that this 14- to 15-year-old "infant" did not realize the risk. Cf. Wytupeck v. City of Camden, 25 N.J. 450, 464 (1957).
In conclusion we are strongly of the opinion that to allow recovery under the facts of this case would make every property owner an insurer for infant trespassers contrary to the Supreme Court's admonition in the Simmel case, supra (28 N.J. at page 11). To apply here the infant trespasser doctrine would be to throw off all limitations on landowner's liability. We cannot permit liability to be based upon the maintenance of natural conditions, common *349 or ordinary objects such as walls, fences, gates, simple tools and appliances. The same degree of care cannot be required in the case of an article which is in such common use that people generally keep it about their premises. 38 Am. Jur., Negligence, § 149, pages 815-816. We draw the line on allowing liability herein. See "Liability, under attractive nuisance doctrine or related principle, for injury to children jumping or falling from nondefective and stationary object or structure reached by climbing," 145 A.L.R. 322; 38 Am. Jur., Negligence, §§ 149 etc., pages 815 etc., and Note, "Landowners' Liability In New Jersey: The Limitation of Traditional Immunities," 12 Rutgers L. Rev. 599 (Summer 1958).
Judgment of dismissal is affirmed.