88 N.J. Super. 516 (1965)
212 A.2d 852
ANDREW ZAKUTANSKY, PLAINTIFF-APPELLANT,
v.
CITY OF BAYONNE, A MUNICIPAL CORPORATION, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued July 12, 1965.
Decided August 10, 1965.
*518 Before Judges HERBERT, LORA and GLICKENHAUS.
Mr. Cresenzi W. Castaldo argued the cause for appellant.
Mr. James P. Dugan argued the cause for respondent.
PER CURIAM.
Appellant, a citizen and property owner of Bayonne, instituted against the city an action in lieu of prerogative writs to set aside an ordinance vacating the public right to certain improved and dedicated park lands owned by the city and also to enjoin the sale of those park lands. The judgment below upheld the ordinance and denied an injunction against sale, and this appeal followed.
The City of Bayonne is the owner of land fronting on Kennedy Boulevard from the south side of West 19th Street to a point 354.52 feet south of the south side of West 16th Street and extending west into Newark Bay. The total area of this tract of land is approximately 37 acres. Of this area 22.5 acres are filled land extending west from the original high water point. This land was reclaimed in 1926 and 1927. The filling and bulkheading of the area was a joint project of the city and federal governments. The 22.5 acres reclaimed were dedicated as park lands, and fronting and abutting upon other park lands in existence at the time of reclamation, the existing and reclaimed lands together made a total park area of 37 acres.
The 15 acres east of the original high water line are divided into two tracts. Tract 1 is 10.257 acres between 16th and 19th Streets and has on it a swimming pool with locker facilities, a tennis court, a stadium used for many events including local *519 high school football games, a field house and a dressing room. Tract 2 has 5.047 acres and extends south from West 16th Street. On this tract are a fire house, a handball court, a golf range, benches and other park facilities.
On the 22.5-acre tract of land reclaimed in 1926 and 1927 are four ball fields, a soccer field, walks, benches and a wading pool.
On February 17, 1965 the five- and ten acre tracts were vacated of their public use, pursuant to N.J.S.A. 40:60-32, by two ordinances of the municipal council of Bayonne, and freed for sale or other disposition by defendant city as being "unsuited to and undesirable for use as a public park and are otherwise useless, burdensome and disadvantageous to the public." Excepted from the vacation ordinance were the municipal swimming pool and the premises occupied by the Bayonne Fire Department training center and fire house. Companion resolutions to the two ordinances made them effective immediately.
On February 19, 1965 the municipal council, by resolution, offered the 10.257-acre tract for sale. The resolution specified the sale should be in accordance with N.J.S.A. 40:61-22.2, providing that park lands may be sold if reclaimed lands are then substituted as new park lands. Portions of the 22.5-acre tract are being used to replace the land vacated and sold.
Testimony indicates that the facilities on the two vacated tracts will be put either on the 22.5-acre reclaimed tract or be moved to other areas in town. The stadium facilities will be moved to an area adjacent to Bayonne High School.
In 1941 another parcel of land in the vicinity of the lands involved in this case was vacated and sold. At that time 7.35 acres of dedicated park lands were sold by the city to one Charles Shilowitz. That parcel was bounded on the east by Hudson County Boulevard, now Kennedy Boulevard; on the north by 19th Street, on the south by 16th Street, and on the west by Avenue A. At the time of sale the city was using the tract as a park and, it would appear, it dedicated the 22.5-acre tract in accordance with N.J.S.A. 40:61-22.2 to replace *520 the 7.35 acres sold. Thus the city has used the 22.5 acres to satisfy the statutory requirements for both the 7.35 acres sold in 1941 and the 10.235 acres to be sold here.
Only one other sale of park lands under N.J.S.A. 40:61-22.2 has occurred in Bayonne. Some time in 1935 or 1936 Bayonne reclaimed 11 acres, which land exists as a park between 27th Street and West 25th Street and extends into Newark Bay. Abutting these lands on the east the city owned a tract used for park purposes, consisting of approximately five acres. After a first sale of these five acres was set aside in accordance with the judgment in Markey v. City of Bayonne, 24 N.J. Super. 105 (App. Div. 1952), the property was sold at a second sale to Mill Realty Company, and the 11 acres abutting it were dedicated to replace what had been sold.
The testimony establishes that the city has an overall shortage of park area and is seeking "Green Acres" assistance from the Department of Conservation and Economic Development. However, there appear to be adequate facilities for the particular area or district here in question, and "Green Acres" assistance plus new park land adjoining proposed Route 440 will greatly reduce the over-all shortage.
It also appears from the record that the city's planning board has approved the vacation ordinance.
Plaintiff's first contention is that the trial court erred in permitting the city to vacate and extinguish the public right in dedicated and improved park lands by a proceeding under N.J.S.A. 40:60-32, which reads:
"Vacation of lands dedicated to public use other than a public street; referendum
Whenever within any municipality any lands dedicated or devoted, wholly or partially, to public use other than a public street, highway, lane, alley, square or place shall be considered by the governing body of such municipality to be unsuited to or undesirable for such public use, or otherwise useless, burdensome or disadvantageous to the public, the governing body may by ordinance and on such terms as it shall prescribe, with the consent of the owner of the fee, vacate or extinguish the public rights in and to those lands and restore the same to the owner of the fee thereof, freed and discharged from all such *521 public rights therein. The ordinance shall not become operative until approved by a majority of the legal voters of the municipality voting on the proposition at a general election. If such municipality shall be the owner of the fee at the time of the final adoption of the ordinance, such ordinance shall become operative without referendum."
Plaintiff contends that the words "any lands" should not include park lands. To support this argument he cites N.J.S.A. 40:60-27:
"Exchange of park lands or streets
The provisions of section 40:60-26 of this title shall not apply to the sale of park lands or streets. No municipality shall sell or dispose of any park lands or streets, except in exchange for other lands, contiguous to such park lands or streets, in area equal to or greater than the lands conveyed, and only for the purposes of straightening or rendering symmetrical the boundary or boundaries of said park lands or streets."
The subject matter of N.J.S.A. 40:60-26 is the sale of any lands not needed for public use, not the vacating of any such lands. Appellant reasons that since the sale of park lands is not permitted under the general sale procedure of chapter 60 of Title 40, and since the proper procedure for the sale of park lands is found in chapter 61 of Title 40 (Public Parks and Playgrounds), then any vacation ordinance should be ruled by chapter 61 proceedings.
Chapter 61 of Title 40 has no provision for vacating of publicly dedicated park lands. N.J.S.A. 40:60-32 is the only statute under which such a vacation could be had. And unlike the sale statute (N.J.S.A. 40:60-26) which specifically excluded the sale of park lands by R.S. 40:60-27, the vacation statute (N.J.S.A. 40:60-32) has no limitations on what should be excluded from "any lands" except those specifically listed within the body of the statute. This would seem to lead to the inference that there was no intent to prevent the vacating of the park lands through the procedure of N.J.S.A. 40:60-32.
Further support of this vacation procedure is to be found in Schneider v. Town of West New York, 84 N.J. Super. 77, *522 83 (App. Div. 1964), which seems to be the only reported case bearing upon the subject. There Judge Gaulkin said:
"Plaintiffs argue that West New York should at least have `vacated' the `dedication' which arose from the town's declaration that it intended to make the acre into a park. The designation of lands as a park may be vacated. N.J.S.A. 40:67-1; 40:60-32; 40:67-19; 40:49-6; cf. Pyatt v. Mayor and Council of Borough of Dunellen, 9 N.J. 548 (1952); N.J.S.A. 40:184-27, 28; 40:60-38; 40:60-36.1-36.4."
These comments, while only dicta, support the vacation procedure the city followed, especially since N.J.S.A. 40:60-32 is specifically cited. Admittedly, as plaintiff contends, the park lands involved in that case, though dedicated, had never actually been applied to park purposes, as distinguished from the dedicated and applied lands involved in the situation before us. However, that does not seem to detract from the validity of Judge Gaulkin's statement as applied to vacation of a dedication declaration, regardless of what followed that declaration. To interpret "any lands" so as to include park lands does not seem to be so liberal a construction as to violate the policy of New Jersey in regard to construing statutes in favor of municipalities. 1947 Const., Art. IV, sec. VII, par. 11; Blackman v. Iles, 4 N.J. 82 (1950). We therefore conclude that the procedure followed by the city of Bayonne in vacating by an ordinance under N.J.S.A. 40:60-32, plaintiff not questioning as to sufficiency of notice, public hearing, etc., was the proper method of vacating.
Plaintiff next argues that the city, after once selling dedicated and improved park lands under N.J.S.A. 40:61-22.2 and replacing those lands with a larger area of bulkheaded, filled and reclaimed lands and then dedicating the larger area as park lands, should not be permitted at a later date to use any excess of lands so dedicated as replacement for other dedicated and improved park lands subsequently sold. Thus, plaintiff contends that since 7.35 acres of dedicated park lands were sold in 1941 and the 22 acres of reclaimed land dedicated as a substitute for those lands, defendant may *523 not use the remaining 15 acres, after subtracting the seven from the 22, as a credit for later sales.
The relevant statute is N.J.S.A. 40:61-22.2, which reads:
"Sale of reclaimed lands abutting park lands
Whenever a municipality has reclaimed lands under water, fronting or abutting park lands and such reclaimed lands have been bulkheaded and filled and are now used for park purposes, the municipality may sell any part or parts, parcel or parcels of park lands not so reclaimed whether contiguous or not contiguous to such reclaimed park lands; provided, that the total area of park land so sold shall not exceed in area the area of such reclaimed lands."
Plaintiff contends that under the proviso of the statute each parcel of park land sold must be replaced by a new parcel of reclaimed land of the same or larger size, and that even if 1000 reclaimed acres were dedicated at the time of the sale of one acre, the other 999 acres could not be used as a "bank" for later sales of park lands. Cited in support of this position is the following statement from the legislative history of N.J.S.A. 40:61-22.2:
"This bill [i.e., S-310, L. 1938, c. 87 approved April 4, 1938] permits a municipality to keep park lands in the water front by providing in effect for the exchange of upland for lands upon the water front."
This statement does not, however, lead to a conclusion that the statute prohibits the city from using extra reclaimed and dedicated land as a credit or offset against both the earlier and later sales.
Plaintiff next cites N.J.S.A. 40:184-27 relating to the sale of public park lands, which reads in relevant part:
"Sale of public park land authorized
Whenever the board or body having the control and management of the public parks of any city in this State shall have determined, or shall hereafter determine, that any lands theretofore acquired in fee simply by such city for use as a public park, whether or not the same shall have been actually dedicated to such use, is no longer needed or desirable for public park purposes, it shall be lawful for the governing body of such city to sell such land, either as a whole or in parcels, and if in parcels, either at one time or from time to time, at public *524 auction, to the highest bidder or bidders, upon such terms and conditions and subject to such restrictions as the said governing body shall fix and determine, and to make due conveyance of such lands pursuant to such sale or sales; * * *." (Emphasis added)
Plaintiff argues that since the section uses the phrase "either as a whole or in parcels, and if in parcels, either at one time or from time to time," the lack of such phraseology in N.J.S.A. 40:61-22.2 indicates that no later sales from time to time should be effected without new lands being dedicated. This analysis of two sections with different purposes is of little persuasive value, however. N.J.S.A. 40:184-27 provides not only for time, but for procedure (e.g., public auction) of sale, whereas N.J.S.A. 40:61-22.2 is concerned only with creating a right to sell under certain conditions. That it does not spell out the procedure is not an indication that such procedure is not reasonable and proper.
The only reported case interpreting N.J.S.A. 40:61-22.2 is Markey v. City of Bayonne, above, 24 N.J. Super. 105. There, as part of its holding, the court ruled that statute permits a municipality to sell any part of park lands of lesser dimensions than lands filled in and designated as park lands. The following discussion of the subject is found in the opinion:
"The Law Division judge reached the conclusion he did by reading the statute here involved together with the provisions of R.S. 40:60-27 (L. 1917, c. 152. Art. XVIII, § 9  the Home Rule Act  as amended) which prohibits a municipality from selling or disposing of any park lands or streets, `except in exchange for other lands contiguous to such park lands or streets, in area equal to or greater than the lands conveyed, and only for the purpose of straightening or rendering symmetrical the boundary or boundaries of said park lands or streets.' The controlling thought in the mind of the judge seems to have been that the Legislature did not intend to permit a municipality to fill in lands under water, designate them as park lands, and then sell off other park lands that had been highly developed. We do not read that conclusion into N.J.S.A. 40:61-22.2.
The Home Rule Act (L. 1917, c. 152, Art. XVIII, § 9) originally forbade a municipality to sell any park lands or streets. The amendment of 1924 (L. 1924, c. 131, § 1) introduced the present language of R.S. 40:60-27 permitting the sale of such lands under the conditions stated. The Home Rule Act provision was last amended in *525 1933 (L. 1933, c. 41, § 1). The statute here involved, N.J.S.A. 40:61-22.2 was passed in 1938 and amended the same year. It is a later statute, dealing with the special situation where a municipality has reclaimed lands under water, fronting or abutting park lands. It must prevail in cases where municipalities have reclaimed lands by bulkheading and filling and then appropriated them to park purposes. Compare R.S. 40:184-27 (L. 1920, c. 81, § 1) authorizing the sale of park lands under certain circumstances, passed only three years after the adoption of the original Home Rule Act provision.
The language of N.J.S.A. 40:61-22.2 is plain and unequivocal. The statute does not limit the kind of park lands that may be sold where equivalent areas have been reclaimed; they may be contiguous or non-contiguous, improved or not improved, so long as they themselves are not lands reclaimed by bulkheading and filling. As was said in City Affairs Committee of Jersey City v. Division of Local Government, etc. 134 N.J.L. 198, 203 (Sup. Ct. 1946):
`Statutes should be interpreted according to the most natural and obvious import of the language, without resorting to subtle or forced construction for the purpose either of limiting or extending their operation.'
And see Weinacht v. Board of Chosen Freeholders of Bergen County, 3 N.J. Super. 172 [174], 176 (App. Div. 1949), affirmed 3 N.J. 330 (1949).
N.J.S.A. 40:61-22.5 (L. 1938, c. 87, § 4) sheds light on the intention of the statute here in question. It requires that the proceeds of any property sold pursuant to N.J.S.A. 40:61-22.2 shall be used for retiring any bonds issued for the purchase or improvement of such property. The use of the word `improvement' implies that included in the permission to sell are such park lands as have theretofore been improved.
The City of Bayonne therefore had full authority to sell the upland portion of the tract between Avenue A and the original high water line fronting on Newark Bay, since it is conceded that lands reclaimed from the bay by bulkheading and filling and now used for park purposes far exceed in total area the area of such upland." (at pp. 113-114)
The lands reclaimed there were reclaimed in 1936. The land sold was not sold until 1952. It follows, therefore, that the court in Markey rejected plaintiff's contentions that lands cannot be reclaimed and dedicated as park lands and then held in reserve or "banked" until the desire to sell other dedicated park lands arises.
From a practical point of view, if plaintiff's procedure of one sale for each dedication of reclaimed lands was to be accepted, regardless of whether it was one acre sold for 1000 *526 dedicated, a problem could arise where the amount of dedicated park lands would be so great as to make a sale of any of the unfilled park lands in a town prohibitive. Since the purpose of the section (N.J.S.A. 40:61-22.2) would seem to be to permit the city to obtain more ratables by exchange of inland park lands for reclaimed park lands, a result which would prevent this would be unreasonable.
Finally, plaintiff argues that this case was decided on a motion for judgment by defendant at the close of the evidence, and that in such a case, the court must accept as true all the evidence of the party against whom the motion is made, and make all inferences in his favor, citing Melone v. Jersey Central Power & Light Co., 18 N.J. 163 (1955). Plaintiff charges that if all the evidence were taken in a light most favorable to him defendant's motion would have been denied.
Regardless of the validity of plaintiff's contention as to the proofs when taken in a light most favorable to him it must be noted that the court did deny defendant's motion for judgment and proceeded to decide the case on the merits at close of the testimony. Furthermore, under R.R. 4:42-2, the court, in an action tried without a jury, may determine the facts and not accept as true plaintiff's evidence in reaching a judgment on a motion by defendant at the close of plaintiff's case.
Judicial review of an ordinance is limited to the motivation of those enacting it. So long as it is motivated by public welfare, and is not tainted with fraud or some clear perversion of power, there is no occasion for judicial intervention. Pyatt v. Mayor and Council of Borough of Dunellen, 9 N.J. 548, 553-554 (1952); Con Realty Co. v. Ellenstein, 125 N.J.L. 196 (Sup. Ct. 1940). The burden of proving the invalidity of an ordinance, valid on its face and enacted under lawful authority, is on the party attacking it, as is the burden of sustaining an allegation that an ordinance is unreasonable and arbitrary. Palisades Properties, Inc. v. Brady, 79 N.J. Super. 327, 358 (Ch. Div. 1963); 11 McQuillin, Municipal Corporations (3d ed., 1950), p. 133.
*527 In this case the testimony indicated that an over-all lack of park land exists in Bayonne. However, there are adequate park facilities in the district surrounding the land which is the subject matter of the attacked ordinances. Furthermore, it is indicated that the "Green Acres" program plus the additional park lands adjacent to the proposed Route 440 will considerably decrease the lack of sufficient park facilities.
The city authorities undoubtedly concluded they could increase ratables, and therefore the municipal revenues, by a sale of the property without unreasonably reducing the amount of park land. Plaintiff has failed to show that this action was arbitrary or palpably unreasonable in any way, and therefore the decision of the Law Division should be affirmed.